**WILLKIE FARR & GALLAGHER LLP**
Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
Matthew M. Gurvitz (SBN 272895)
MGurvitz@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067-2905
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

Attorneys for Defendant
AKT Franchise, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

DANCE FITNESS MICHIGAN, LLC, et al.,

Plaintiffs,

v.

AKT FRANCHISE, LLC, et al.,

Defendants.

AKT FRANCHISE, LLC,

Counterclaimant,

v.

DANCE FITNESS MICHIGAN, LLC, PROPERTY MAINTENANCE, INC., DEANNA ALFREDO, TEENY TURNER LLC, NISHA MOELLER, S2 FITNESS ENTERPRISES, LLC, SAMANTHA COX, SUZANNE FISCHER, NICHOLE SOROS, MICHAEL SOROS, ADEDGE SERVICES INC., PAUL DUMAS, and JODI DUMAS,

Counter Defendants.

Case No. 8:23-cv-01643-JVS(JDEx)

Hon. James V. Selna
Courtroom 10C – Santa Ana

**DEFENDANT AKT FRANCHISE, LLC'S COUNTERCLAIM**

Action Filed: August 30, 2023
Trial Date: None set

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

# COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaimant AKT Franchise, LLC ("AKT") brings the following counterclaims against Counter Defendants Dance Fitness Michigan, LLC ("Dance Fitness"), Property Maintenance, Inc. ("Property Maintenance"), Deanna Alfredo ("Alfredo"), Teeny Turner LLC ("Teeny Turner"), Nisha Moeller ("Moeller"), S2 Fitness Enterprises, LLC ("S2 Fitness"), Samantha Cox ("Cox"), Suzanne Fischer ("Fischer"), Nichole Soros, Michael Soros, AdEdge Services Inc. ("AdEdge Services"), Paul Dumas, and Jodi Dumas (collectively, "Counter Defendants").[1]

## I. INTRODUCTION

1. Counter Defendants' Amended Complaint is their attempt to disguise and deflect from their own wrongdoing and breaches to escape the consequences of their lack of commitment and consistency as franchise partners. It is actually Counter Defendants who have failed to live up to any of their promises. They now seek an easy way out by asserting generic and baseless claims against AKT and seemingly every person ever associated with AKT. But at the end of the day, each of the Counter Defendants failed to comply with their respective contractual obligations. Instead of focusing on their respective businesses, each Counter Defendant looked to AKT to act as an insurer for their businesses. According to Counter Defendants, if they did not succeed in operating their businesses, AKT had to pick up the pieces, and the bill. That is simply not how franchises work, and the agreements between the parties clearly set forth Counter Defendants' obligations, which they each failed to satisfy.

---

[1] AKT brings counterclaims against every Plaintiff in this action except Soros & Associates, LLC, Amanda Davis ("Davis"), 6PK Mason LLC ("6PK Mason"), and 6PK Liberty LLC ("6PK Liberty"). AKT is engaged in ongoing arbitration with Davis, 6PK Mason, and 6PK Liberty, which has not reached final conclusion. AKT reserves the right to amend this Counterclaim to include its claims against Davis, 6PK Mason, and 6PK Liberty if and when it is able to do so.

2. AKT is a national franchisor of dance-based fitness studios, which franchises businesses to operate a studio under the name and mark AKT® and in accordance with the proprietary system developed by AKT.

3. Several years ago, Counter Defendants opened seven franchised AKT® fitness studios pursuant to Franchise Agreements ("FAs") and Area Development Agreements ("ADAs") that they executed with AKT, respectively. In addition to the business obligations in running a franchised studio, the individual Counter Defendants personally guaranteed that they would "punctually pay and perform each and every undertaking, agreement and covenant" in their respective FAs and ADAs.

4. Over the course of several years, Counter Defendants each eventually closed their respective studios without AKT's consent and in breach of their FAs with AKT. Counter Defendants' unilateral decision to close their franchised studios left years remaining on their ten-year terms. Several Counter Defendants also failed to open and operate additional studios that they had promised to open pursuant to their respective ADAs.

5. As a result, AKT lost out on years of revenue it was promised under its agreements with Counter Defendants and was hindered from growing in Counter Defendants' substantial, and potentially highly lucrative, development areas. The abrupt closures of the franchised studios caused AKT significant monetary and reputation damage, including but not limited to unexpected operational expenses and rent payments. Counter Defendants must be held to the promises they made and pay for the damage they have caused.

6. AKT, meanwhile, fulfilled its side of the bargain. AKT promised to provide, and did provide, resources to assist with the development and operation of the AKT® studios. But Counter Defendants did not follow the plan.

7. Counter Defendants have apparently decided that instead of honoring their commitments and working with AKT to run their respective studios well, they

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

want out. They refused to run their studios according to AKT's guidelines. AKT offered help at every step, but it was disregarded.

8. Counter Defendants want to leave the mess they made for someone else (*i.e.*, AKT). Counter Defendants have breached their promises to AKT by failing to open studios in accordance with the ADAs, failing to run their studios in accordance with their FAs, and abandoning their studios without AKT's consent. Counter Defendants must be held accountable for their actions.

## II. <u>FACTS</u>

### A. <u>XPONENTIAL FORMS AKT FRANCHISE</u>

9. Xponential Fitness, LLC ("Xponential"), the parent company of AKT, was established to bring together the best of boutique fitness brands in the industry and is the curator of top brands across virtually every vertical in the boutique fitness industry, including Pilates, barre, cycle, rowing, stretch, stride, and yoga. Xponential has decades of boutique fitness franchising experience across all of its brands, which are available through their franchisees in over 2,500 studios globally and generate annual revenues in the hundreds of millions of dollars.

10. Anna Kaiser is a fitness trainer credited with the creation of a dance-based fitness concept known and marketed as Anna Kaiser Technique.

11. In March 2018, Xponential entered into an agreement with Anna Kaiser pursuant to which AKT agreed to buy all rights to franchise Kaiser and her company AKT inMotion's business and related intellectual property rights for use in the creation, development, oversight, and licensing of a Franchise System to franchisees.

12. Xponential formed AKT for the purpose of acquiring from Kaiser and AKT inMotion the franchising rights and intellectual property rights relating to their fitness brands.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## B. COUNTER DEFENDANTS EXECUTE AND GUARANTEE THEIR RESPECTIVE FRANCHISE AGREEMENTS

***Deanna Alfredo, Dance Fitness Michigan, LLC, and Property Maintenance, Inc.'s Franchise Agreements and Area Development Agreement with AKT***

13. On or about September 12, 2018, Property Maintenance executed an FA with AKT ("Royal Oak FA"), which required Property Maintenance to operate a studio ("Royal Oak Studio") for an initial term of ten years and to perform all of the obligations due under the Royal Oak FA. A true and accurate copy of the Royal Oak FA is attached hereto as Exhibit 1.

14. Also on or about September 12, 2018, Property Maintenance signed an ADA ("Michigan ADA"), under which Property Maintenance was granted the right and undertook the obligation to open and operate three AKT® studios within the designated development area consisting of 15 zip codes pursuant to a development schedule.[2] Several months later, on or about March 27, 2019, the parties entered into an amendment to the Michigan ADA, under which Property Maintenance agreed to open an additional studio, for a total of four studios, and the designated development area was expanded to 21 zip codes. True and accurate copies of the Michigan ADA and its amendment are attached hereto as Exhibits 2 and 3.

15. On or about June 26, 2019, Dance Fitness executed an FA with AKT ("Rochester Hills FA"), which required Dance Fitness to operate a studio ("Rochester Hills Studio") for an initial term of ten years and to perform all of the obligations due under the Rochester Hills FA. A true and accurate copy of the Rochester Hills FA is attached hereto as Exhibit 4.

16. As part of the Royal Oak and Rochester Hills FAs, Alfredo executed for each a Guarantee, Indemnification and Acknowledgement agreement ("Royal

---

[2] The Michigan ADA was countersigned by AKT on October 4, 2018, which was the effective date of the Michigan ADA.



WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Oak Guarantee" and "Rochester Hills Guarantee"), stating (among other things) that Alfredo will be personally liable for any breach of the Royal Oak and Rochester Hills FAs and any resulting monetary obligations. *See* Exs. 1 and 4, at 44–45.

17. Under the Royal Oak and Rochester Hills Guarantees, Alfredo (a) unconditionally guaranteed "the full and timely performance by Franchisee of each obligation undertaken by Franchisee under the terms of the Franchise Agreement, including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement," and (b) agreed "to be individually bound by all obligations and covenants of Franchisee contained in the Franchise Agreement." *See* Exs. 1 and 4, at 44. The term "Franchisee" was defined to mean Property Maintenance and Dance Fitness, respectively. *Id.*

18. Additionally, as part of the Michigan ADA, Alfredo executed a Guaranty and Assumption of Obligations agreement ("Michigan ADA Guaranty") which states that Alfredo personally and unconditionally guaranteed that Property Maintenance would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the Area Development Agreement" and will "be personally bound by, and personally liable for the breach of, each and every obligation of Developer under the Area Development Agreement, both monetary obligations and non-monetary." *See* Ex. 2, at Attachment to Development Agreement. The term "Developer" was defined to mean Property Maintenance. *Id.*

19. On or about June 28, 2019, Alfredo executed a Short-Term Bridge Loan Agreement ("Michigan Loan Agreement") to assist Alfredo in purchasing equipment while she waited for her equipment loan to close. A true and accurate copy of the Michigan Loan Agreement is attached hereto as Exhibit 5. The Michigan Loan Agreement included a provision releasing AKT's parent company and its subsidiaries from all liability through the date of the agreement. Ex. 5, at 2.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

***Samantha Cox, Suzanne Fischer, and S2 Fitness Enterprises, LLC's Franchise Agreement and Area Development Agreement with AKT***

20. On or about March 21, 2019, Samantha Cox, as Manager of Harlan Cox Enterprises, LLC ("HCE"), executed an FA with AKT ("Inman Park FA"), which required HCE to operate a studio ("Inman Park Studio") for an initial term of ten years and to perform all of the obligations due under the Inman Park FA. A true and accurate copy of the Inman Park FA is attached hereto as Exhibit 6.

21. As part of the Inman Park FA, Cox and her husband Thomas Cox executed a Guarantee, Indemnification and Acknowledgement agreement ("Inman Park Guarantee"), stating (among other things) that they will be personally liable for any breach of the FA and any resulting monetary obligations. *See* Ex. 6, at 44–45.

22. Under the Inman Park Guarantee, Cox (a) unconditionally guaranteed "the full and timely performance by Franchisee of each obligation undertaken by Franchisee under the terms of the Franchise Agreement, including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement," and (b) agreed "to be individually bound by all obligations and covenants of Franchisee contained in the Franchise Agreement." *See* Ex. 6, at 44. The term "Franchisee" was defined to mean HCE. *Id.*

23. Shortly afterward, Cox decided to partner with Fischer to operate multiple AKT® studios in the Atlanta area. On or about June 4, 2019, Cox and Fischer signed an ADA ("Atlanta ADA"), under which they were granted the right and undertook the obligation to open and operate three AKT® studios within the designated development area. A true and accurate copy of the Atlanta ADA is attached hereto as Exhibit 7.

24. Additionally, as part of the Atlanta ADA, Cox and Fischer executed a Guaranty and Assumption of Obligations agreement ("Atlanta ADA Guaranty") which states that they personally and unconditionally guaranteed that they would

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

"punctually pay and perform each and every undertaking, agreement and covenant set forth in the Area Development Agreement" and will "be personally bound by, and personally liable for the breach of, each and every obligation of Developer under the Area Development Agreement, both monetary obligations and non-monetary." *See* Ex. 7, at Attachment to Development Agreement. The term "Developer" was defined to mean Cox and Fischer. *Id.*

25. Cox and Fischer also formed a new operating entity, S2 Fitness. On or about October 22, 2019, AKT, Cox, Fischer, and S2 Fitness executed a Consent to Transfer of Ownership Interests ("Consent to Transfer") so that the Inman Park FA could be transferred to S2 Fitness. A true and accurate copy of the Consent to Transfer is attached hereto as Exhibit 8.

26. As part of the Consent to Transfer, and as partial consideration for AKT's agreement to waive its transfer fee, Cox, Fischer, and S2 Fitness agreed to release AKT and its affiliated persons from "any and all claims, obligations, debts, proceedings, demands, causes of actions, rights to terminate and rescind, liabilities, losses, damages, and rights of every kind and nature whatsoever," including those arising out of the Franchise Agreement. *See* Ex. 8, at § 6.

27. On or about November 26, 2019, AKT, HCE, and S2 Fitness executed an Assignment of Franchise Agreement to Operating Entity ("Inman Park Assignment"). A true and accurate copy of the Inman Park Assignment is attached hereto as Exhibit 9.

28. The Assignment contained a broad general release in favor of AKT. *See* Ex. 9, at § 4.

29. As part of the Inman Park Assignment, Cox and Fischer executed a Guarantee, Indemnification and Acknowledgement agreement ("Inman Park Assignment Guarantee"), guaranteeing the timely performance of all of S2's obligations under the Franchise Agreement and agreeing to be personally liable,

jointly and severally, for any breach of the Franchise Agreement and any resulting monetary obligations. *See* Ex. 9, at Ex. A.

***Nisha Moeller and Teeny Turner LLC's Franchise Agreement with AKT***

30. On or about December 31, 2019, Moeller executed an FA with AKT ("Chicago FA"), which required Moeller to operate a studio ("Chicago Studio") for an initial term of ten years and to perform all of the obligations due under the Chicago FA. A true and accurate copy of the Chicago FA is attached hereto as Exhibit 10.

31. As part of the Chicago FA, Moeller executed a Guarantee, Indemnification and Acknowledgement agreement ("Chicago Guarantee"), stating (among other things) that Moeller will be personally liable for any breach of the Chicago FA and any resulting monetary obligations. *See* Ex. 10, at 43–44.

32. Under the Chicago Guarantee, Moeller (a) unconditionally guaranteed "the full and timely performance by Franchisee of each obligation undertaken by Franchisee under the terms of the Franchise Agreement, including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement," and (b) agreed "to be individually bound by all obligations and covenants of Franchisee contained in the Franchise Agreement." *See* Ex. 10, at 43. The term "Franchisee" was defined to mean "Moeller, or her assignee, if a partnership, corporation or limited liability company is later formed." *Id.*

33. Moeller negotiated certain favorable amendments to the Chicago FA, which were reflected in an Amendment to the Franchise Agreement dated January 30, 2020 ("Chicago Amendment"). Among these were a cap on rebranding costs, limited enforcement of noncompetition covenants to two years after termination, and a cap on lost future royalties recoverable by AKT. A true and accurate copy of the Chicago Amendment is attached hereto as Exhibit 11.

34. On or about June 16, 2021, Moeller assigned all of her rights, assets, and obligations under the Chicago FA to Teeny Turner, LLC, which assumed

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

them. A true and accurate copy of the Assignment of Franchise Agreement to Operating Entity is attached hereto as Exhibit 12.

***Nichole Soros and Michael Soros's Franchise Agreement and Area Development Agreement with AKT***

35. On or about February 23, 2021, Nichole Soros and Michael Soros (collectively, "Soroses") executed an FA with AKT ("Tampa FA"), which required the Soroses to operate a studio ("Tampa Studio") for an initial term of ten years and to perform all of the obligations due under the Tampa FA. A true and accurate copy of the Tampa FA is attached hereto as Exhibit 13.

36. As part of the Tampa FA, the Soroses and others executed a Guarantee, Indemnification and Acknowledgement agreement ("Tampa FA Guarantee"), stating (among other things) that they will be personally liable for any breach of the Tampa FA and any resulting monetary obligations. *See* Ex. 13, at 43–44.

37. Under the Tampa FA Guarantee, the Soroses (a) unconditionally guaranteed "the full and timely performance by Franchisee of each obligation undertaken by Franchisee under the terms of the Franchise Agreement, including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement," and (b) agreed "to be individually bound by all obligations and covenants of Franchisee contained in the Franchise Agreement." See Ex. 13, at 43. The term "Franchisee" was defined to mean the Soroses "or their assignee, if a partnership, corporation or limited liability company is later formed." *Id.*

38. On or about February 24, 2021, the Soroses signed an ADA ("Tampa ADA"), under which they was granted the right and undertook the obligation to open and operate three AKT® studios within the designated development area consisting of 17 zip codes pursuant to a development schedule. A true and accurate copy of the Tampa ADA is attached hereto as Exhibit 14.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

39. Additionally, as part of the Tampa ADA, the Soroses and others executed a Guaranty and Assumption of Obligations agreement ("Tampa ADA Guaranty") which states that they personally and unconditionally guaranteed that the Soroses would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the Area Development Agreement" and will "be personally bound by, and personally liable for the breach of, each and every obligation of Developer under the Area Development Agreement, both monetary obligations and non-monetary." *See* Ex. 14, at Attachment to Development Agreement. The term "Developer" was defined to mean the Soroses. *Id.*

***Paul Dumas, Jodi Dumas, and AdEdge Services Inc.'s Franchise Agreements and Area Development Agreement with AKT***

40. On or about June 9, 2020, AdEdge Services signed an ADA ("Fort Lauderdale ADA"), under which AdEdge Services was granted the right and undertook the obligation to open and operate ten AKT® studios within the designated development area consisting of 55 zip codes pursuant to a development schedule. A true and accurate copy of the Fort Lauderdale ADA is attached hereto as Exhibit 19.

41. On or about December 31, 2020, AdEdge Services executed an FA with AKT ("Plantation FA"), which required AdEdge Services to operate a studio ("Plantation Studio") for an initial term of ten years and to perform all of the obligations due under the Plantation FA. A true and accurate copy of the Plantation FA is attached hereto as Exhibit 29.

42. On or about September 30, 2021, AdEdge Services executed another FA with AKT ("Coral Springs FA"), which required AdEdge Services to operate a studio ("Coral Springs Studio") for an initial term of ten years and to perform all of the obligations due under the Coral Springs FA. A true and accurate copy of the Coral Springs FA is attached hereto as Exhibit 30.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

43. As part of the Plantation and Coral Springs FAs, Paul Dumas executed for each a Guarantee, Indemnification and Acknowledgement agreement ("Plantation Guarantee" and "Coral Springs Guarantee"), stating (among other things) that he will be personally liable for any breach of the Plantation and Coral Springs FAs and any resulting monetary obligations. Exs. 29 and 30, at 48–49.

44. Under the Plantation and Coral Springs Guarantees, Paul Dumas (a) unconditionally guaranteed "the full and timely performance by Franchisee of each obligation undertaken by Franchisee under the terms of the Franchise Agreement, including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement," and (b) agreed "to be individually bound by all obligations and covenants of Franchisee contained in the Franchise Agreement." *See* Exs. 29 and 30, at 48. The term "Franchisee" was defined to mean AdEdge Services. *Id.*

45. Additionally, as part of the Fort Lauderdale ADA, the Dumases executed a Guaranty and Assumption of Obligations agreement ("Fort Lauderdale ADA Guaranty") which states that they personally and unconditionally guaranteed that AdEdge Services would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the Area Development Agreement" and will "be personally bound by, and personally liable for the breach of, each and every obligation of Developer under the Area Development Agreement, both monetary obligations and non-monetary." *See* Ex. 19, at Attachment to Development Agreement. The term "Developer" was defined to mean AdEdge Services. *Id.*

### C. <u>COUNTER DEFENDANTS OPEN SIX AKT® STUDIOS</u>

***Deanna Alfredo, Dance Fitness Michigan, LLC, and Property Maintenance, Inc. Open the Royal Oak and Rochester Hills Studios***

46. Property Maintenance opened the Royal Oak Studio, at 30955 Woodward Avenue, Suite 515, Royal Oak, Michigan 48073, on or about December 9, 2019.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

47. During the Covid-19 shutdowns in Michigan, Alfredo, Dance Fitness, and Property Maintenance suspended operation of the Royal Oak Studio and development of the Rochester Hills Studio. They requested assistance from AKT.

48. AKT agreed to provide financial support, as reflected in the Studio Support and Confidentiality Agreement, which Dance Fitness executed on or about April 19, 2021 ("Michigan Studio Support Agreement"). A true and accurate copy of the Michigan Studio Support Agreement is attached hereto as Exhibit 15. The Michigan Studio Support Agreement included a provision under which Dance Fitness, on behalf of itself and its current and former owners, parents, affiliates, and subsidiaries, released AKT from any and all claims arising out of or relating in any way to the Rochester Hills FA or development, ownership, or operation of any AKT® studio, and covenanted not to sue on any released claims. *See* Ex. 15, at § 6.

49. Also on or about April 19, 2021, Dance Fitness executed a Secured Promissory Note ("Michigan Note") under which it agreed to repay the borrowed funds on certain terms and conditions, and a Security Agreement granting AKT a security interest in Dance Fitness's assets ("Michigan Security Agreement"). True and accurate copies of the Michigan Note and the Michigan Security Agreement are attached hereto as Exhibit 16 and 17. The Michigan Note provides, among other things, that Dance Fitness is responsible for all costs and expenses (including attorneys' fees) that AKT may incur in enforcing the terms of the Michigan Note. Ex. 16, at 6–7.

50. In connection with the Michigan Note, Alfredo signed a Guaranty ("Michigan Note Guaranty") under which she unconditionally guaranteed Dance Fitness's compliance with the Note. A true and accurate copy of the Michigan Note Guaranty is attached hereto as Exhibit 18.

51. Dance Fitness opened the Rochester Hills Studio, at 230 E. Auburn Road, Rochester Hills, Michigan 48307, on or about May 5, 2022.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

***Samantha Cox, Suzanne Fischer, and S2 Fitness Enterprises, LLC Open the Inman Park Studio***

52. Cox, Fischer, and S2 Fitness prepared to open the Inman Park Studio in early 2020, interviewing instructors, offering pop-up classes, and selling presale memberships. When the Covid-19 pandemic hit, AKT quickly developed a program of live virtual classes on a digital platform called AKT GO, which it offered to all of its franchisees free of charge.

53. Once local health guidelines permitted in-person classes, Cox, Fischer, and S2 Fitness had a soft opening in June 2020 and a grand opening in September 2020. AKT provided them with extensive assistance developing and implementing marketing and sales strategies during this time.

54. Unfortunately, Cox, Fischer, and S2 Fitness ignored some critical aspects of the AKT business model, such as hiring a full-time general manager and engaging in follow-up communications with prospective customers.

***Nisha Moeller and Teeny Turner LLC Open the Chicago Studio***

55. Pursuant to the Chicago FA, Moeller and Teeny Turner opened and operated the Chicago Studio at 1100 North Wells Street, Chicago, Illinois 60610, on or about May 30, 2022.

***Nichole Soros and Michael Soros Open the Tampa Studio***

56. Pursuant to the Tampa FA, the Soroses opened and operated the Tampa Studio at 10617 Sheldon Road, Tampa, FL 33626, on or about April 7, 2022.

57. On or about December 5, 2022, the Soroses and AKT's parent company, Xponential, signed a Resale Assistance Agreement in connection with the Soroses' desire to sell the Tampa Studio. Under the Resale Assistance Agreement (attached hereto as Exhibit 20), the Soroses executed a general release in favor of Xponential and AKT, as to any and all claims against AKT and related parties.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

***Paul Dumas, Jodi Dumas, and AdEdge Services Open the Plantation and Coral Springs Studios***

58. AdEdge Services opened the Plantation Studio, at 801 S University Drive C- 138, Plantation, FL 33324, on or about April 14, 2022.

59. The Coral Springs Studio opened at 9232 Wiles Road, Coral Springs, FL 33067, on or about August 30, 2022.

**D. <u>COUNTER DEFENDANTS ANNOUNCE SUDDEN CLOSURES AND UNILATERALLY CEASE OPERATIONS OF THEIR RESPECTIVE STUDIOS</u>**

***Deanna Alfredo, Dance Fitness Michigan, LLC, and Property Maintenance, Inc. Abandon the Royal Oak and Rochester Hills Studios***

60. In December 2022, Alfredo, Dance Fitness, and Property Maintenance informed AKT that they intended to close the Royal Oak and Rochester Hills Studios at the end of December 2022. Both studios closed on December 31, 2022 and never reopened.

61. About a month before closing the Royal Oak and Rochester Hills Studios, Alfredo, Dance Fitness, and Property Maintenance sold prepaid annual memberships to customers, valued at $1,000 each. After closing the studios, Alfredo, Dance Fitness, and Property Maintenance refused to refund customers, despite the Michigan Attorney General's demand that they do so. In order to preserve whatever remained of its goodwill, AKT refunded Alfredo, Dance Fitness, and Property Maintenance's customers.

62. Under the Royal Oak and Rochester Hills FAs, Alfredo, Dance Fitness, and Property Maintenance were obligated to operate the Royal Oak and Rochester Hills Studios for an initial term of ten years, and to pay all initial and ongoing monetary obligations during that time. These monetary obligations included "royalty fee equal to seven percent (7%) of the Gross Sales . . . generated by the Studio" throughout the ten-year term of the FAs, contributions to the

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

marketing fund, and to pay technology and other ongoing fees as incurred. Exs. 1 and 4, at 6–8.

63. Both the Royal Oak and Rochester Hills FAs contained a provision under which Alfredo, Dance Fitness, and Property Maintenance agreed to indemnify AKT for any costs and expenses incurred due to their operation of the Studios. Ex. 1, at 23; Ex. 4, at 22.

64. Section 15.1(A)(4) of the Royal Oak and Rochester Hills FAs entitled AKT to terminate the FAs and pursue recourse for breach of the FAs if the franchisee "voluntarily or otherwise abandons the Studio." Ex. 1, at 27–28; Ex. 4, at 27. The term "abandon" is defined in the Royal Oak and Rochester Hills FAs to include "failure to actively operate the Studio for more than two (2) business days without Franchisor's prior written consent." *Id.*

65. Pursuant to section 15.1(A)(4) of the Royal Oak and Rochester Hills FAs, Alfredo, Dance Fitness, and Property Maintenance's unilateral closure of the Royal Oak and Rochester Hills Studios constituted abandonment and was grounds for immediate termination of the FAs. In addition, Alfredo and Property Maintenance were in default of the Michigan ADA due to their failure to open two of the four required locations, as well as under the cross-default provision of the Royal Oak and Rochester Hills FAs. Ex. 1, at 30; Ex. 4, at 29.

66. In January 2023, AKT sent a default notice to Alfredo, Dance Fitness, and Property Maintenance, demanding assurance that they would comply with their contractual obligations. Receiving no response, AKT terminated the Royal Oak and Rochester Hills FAs by Notice of Termination of Franchise Agreements dated March 6, 2023. True and accurate copies of the Notice of Default and Notice of Termination are attached hereto as Exhibits 21 and 22.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

***Samantha Cox, Suzanne Fischer, and S2 Fitness Enterprises, LLC Abandon the Inman Park Studio***

67. By Notice of Default dated April 26, 2022, Cox, Fischer, and S2 Fitness's landlord informed AKT that they were in default of their lease, due to their failure to pay over $53,000 in rent. A default under the lease or the loss of the right to possess the Inman Park Studio premises is a breach of the Inman Park FA. Ex. 6, at 27–28.

68. Shortly after learning of Cox, Fischer, and S2 Fitness's lease default, AKT became aware through a third-party vendor that they planned to close the Inman Park Studio. By letter dated May 16, 2022, AKT outlined Cox, Fischer, and S2 Fitness's breaches of the Inman Park FA and the Atlanta ADA and urged them to cure their defaults and keep the Inman Park Studio open. With respect to the undeveloped locations under the Atlanta ADA, AKT also offered Cox, Fischer, and S2 Fitness the opportunity to enroll in a resale program. A true and accurate copy of the May 16, 2022 letter is attached hereto as Exhibit 23. Cox, Fischer, and S2 Fitness rebuffed all of AKT's attempts to work with them.

69. On or about May 27, 2022, Cox, Fischer, and S2 Fitness announced suddenly, and without AKT's consent, via the Inman Park Studio's Instagram account that the Studio would be closing permanently on May 30, 2022. The Instagram post used AKT's marks and related IP, including the AKT logo, purple colorway, and font and formatting characteristic in AKT's advertising, messaging, and social media posts. A true and accurate copy of the Instagram post is attached hereto as Exhibit 24. Cox, Fischer, and S2 Fitness did, in fact, close the Inman Park Studio on May 30, 2022.

70. The Instagram page, and all other social media accounts, for the Inman Park Studio were subject to AKT's access and control under the Inman Park FA. *See* Ex. 6, at 20. Pursuant to the Inman Park FA to which Cox, Fischer, and S2 Fitness agreed, AKT retained the right to control all use of social media by Cox,

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Fischer, and S2 Fitness that mentioned or used AKT's marks, and to occupy the Inman Park Studio's social media pages.

71. Cox, Fischer, and S2 Fitness did not seek or receive approval from AKT to post the May 27, 2022 Instagram announcement, or for the use of the AKT marks or other related IP in connection therewith.

72. Through their May 27, 2022 Instagram announcement and subsequent May 30, 2022 closure of the Inman Park Studio, Cox, Fischer, and S2 Fitness materially breached the Inman Park FA in multiple respects, including, but not limited to, the following:

- Failing and refusing to at all times faithfully, honestly, and diligently perform their obligations under the Inman Park FA and use best efforts to promote AKT and the Inman Park Studio. Ex. 6, at 2.
- Failing and refusing to operate the Inman Park Studio in accordance with the Inman Park FA, open the studio for regular, continuous business, or comply with the franchise manual, system, and standards, including to operate the studio seven days a week, because it was permanently closed on May 30, 2022. Ex. 6, at 2.
- Intentionally using AKT's marks in a manner *not* authorized by AKT by featuring the AKT logo, purple colorway, and distinctive font and formatting in an official-appearing public social media post coming from the Instagram account of the Inman Park Studio that announced its unauthorized closure—inconsistent with Cox, Fischer, and S2 Fitness's obligation to promote AKT and the Inman Park Studio. Ex. 6, at 5.
- Abandoning the Inman Park Studio including by "indicat[ing] a desire or intent to discontinue operating the Studio in accordance with [the Inman Park FA] or the Manual." Ex. 6, at 28.

- Materially misusing AKT's marks, including the AKT logo, purple colorway, and the Inman Park Studio's Instagram webpage, to tarnish, denigrate, and harm the brand. Ex. 6, at 28.
- Utilizing studio information, including membership information and franchisee-franchisor relations, and proprietary marks and systems in an unauthorized manner to announce the unilateral closure of the Inman Park Studio. Ex. 6, at 27–30.

73. Under the Inman Park FA, Cox, Fischer, and S2 Fitness were obligated to operate the Inman Park Studio for an initial term of ten years, and to pay all initial and ongoing monetary obligations during that time. These monetary obligations included "royalty fee equal to seven percent (7%) of the Gross Sales . . . generated by the Studio" throughout the ten-year term of the agreement, contributions to the marketing fund, and to pay technology and other ongoing fees as incurred. Ex. 6, at 6–8.

74. The Inman Park FA also contained a provision under which Cox, Fischer, and S2 Fitness agreed to indemnify AKT for any costs and expenses incurred due to their operation of the Inman Park Studio. Ex. 6, at 23.

75. Section 15.1(A)(4) of the Inman Park FA entitled AKT to terminate the FA and pursue recourse for breach of the FA if the franchisee "voluntarily or otherwise abandons the Studio." *See* Ex. 6, at 27–28. The term "abandon" is defined in the Inman Park FA to include "failure to actively operate the Studio for more than two (2) business days without Franchisor's prior written consent." *Id.* at 28. In addition, a "default under the lease agreement or otherwise los[ing] the right to possess the premises at the location at which the Studio is located" also qualifies as a default and breach of the Franchise Agreement. *Id.*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

76. Pursuant to section 15.1(A)(4) of the Inman Park FA, Cox, Fischer, and S2 Fitness's unilateral closure of the Inman Park Studio constituted abandonment and was grounds for immediate termination of the FA. In addition, Cox, Fischer, and S2 Fitness are in default of the ADA due to their failure to open two of the three required locations, as well as under the cross-default provision of the Inman Park FA. Ex. 6, at 30.

***Nisha Moeller and Teeny Turner LLC Abandon the Chicago Studio***

77. On or about March 17, 2023, Moeller and Teeny Turner announced suddenly, and without AKT's consent, via the Chicago Studio's Instagram account that they intended to close the Chicago Studio on March 19, 2023. The Instagram post used AKT's marks and related IP, including the AKT logo, purple colorway, and font and formatting characteristic in AKT's advertising, messaging, and social media posts. A true and accurate copy of the Instagram post is attached hereto as Exhibit 25. Moeller and Teeny Turner did, in fact, close the Chicago Studio on or about March 19, 2023 and never reopened.

78. The Instagram page, and all other social media accounts, for the Chicago Studio were subject to AKT's access and control under the Chicago FA. *See* Ex. 10, at 19. Pursuant to the Chicago FA to which Moeller and Teeny Turner agreed, AKT retained the right to control all use of social media by Moeller and Teeny Turner that mentioned or used AKT's marks, and to occupy the Chicago Studio's social media pages.

79. Moeller and Teeny Turner did not seek or receive approval from AKT to post the March 17, 2023 Instagram announcement, or for the use of the AKT marks or other related IP in connection therewith. Indeed, Moeller and Teeny Turner did not even *notify* AKT that they would be publishing the announcement or closing the Chicago Studio—let alone using AKT's IP to do so.

80. Through their March 17, 2023 Instagram announcement and subsequent March 19, 2023 closure of the Chicago Studio, Moeller and Teeny

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Turner materially breached the Chicago FA in multiple respects, including, but not limited to, the following:

- Failing and refusing to at all times faithfully, honestly, and diligently perform their obligations under the Chicago FA and use best efforts to promote AKT and the Chicago Studio. Ex. 10, at 2.
- Failing and refusing to operate the Chicago Studio in accordance with the Chicago FA, open the studio for regular, continuous business, or comply with the franchise manual, system, and standards, including to operate the studio seven days a week, because it was permanently closed on March 19, 2023. Ex. 10, at 2.
- Intentionally using AKT's marks in a manner *not* authorized by AKT by featuring the AKT logo, purple colorway, and distinctive font and formatting in an official-appearing public social media post coming from the Instagram account of the Chicago Studio that announced its unauthorized closure—inconsistent with Moeller and Teeny Turner's obligation to promote AKT and the Chicago Studio. Ex. 10, at 5.
- Abandoning the Chicago Studio including by "indicat[ing] a desire or intent to discontinue operating the Studio in accordance with [the Chicago FA] or the Manual." Ex. 10, at 27.
- Materially misusing AKT's marks, including the AKT logo, purple colorway, and the Chicago Studio's Instagram webpage, to tarnish, denigrate, and harm the brand. Ex. 10, at 27.
- Utilizing studio information, including membership information and franchisee-franchisor relations, and proprietary marks and systems in an unauthorized manner to announce the unilateral closure of the Chicago Studio. Ex. 10, at 27–29.

81. Under the Chicago FA, Moeller and Teeny Turner were obligated to operate the Chicago Studio for an initial term of ten years, and to pay all initial and ongoing monetary obligations during that time. These monetary obligations

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

included "royalty fee equal to seven percent (7%) of the Gross Sales . . . generated by the Studio" throughout the ten-year term of the agreement, contributions to the marketing fund, and to pay technology and other ongoing fees as incurred. Ex. 10, at 6–8.

82. The Chicago FA also contained a provision under which Moeller and Teeny Turner agreed to indemnify AKT for any costs and expenses incurred due to their operation of the Chicago Studio. Ex. 10, at 22.

83. Section 15.1(A)(4) of the Chicago FA entitled AKT to terminate the FA and pursue recourse for breach of the FA if the franchisee "voluntarily or otherwise abandons the Studio." *See* Ex. 10, at 27. The term "abandon" is defined in the Chicago FA to include "failure to actively operate the Studio for more than two (2) business days without Franchisor's prior written consent." *Id.*

84. Pursuant to section 15.1(A)(4) of the Chicago FA, Moeller and Teeny Turner's unilateral closure of the Chicago Studio constituted abandonment and was grounds for immediate termination of the FA.

85. On March 22, 2023, AKT terminated the Chicago FA due to Moeller and Teeny Turner's abandonment of the Chicago Studio. A true and accurate copy of the Notice of Termination is attached hereto as Exhibit 26.

***Nichole Soros and Michael Soros Abandon the Tampa Studio***

86. On or about March 17, 2023, the Soroses announced suddenly, and without AKT's consent, via the Tampa Studio's Instagram account that they intended to close the Tampa Studio on March 20, 2023. The Instagram post used AKT's marks and related IP, including the AKT logo, purple colorway, and font and formatting characteristic in AKT's advertising, messaging, and social media posts. A true and accurate copy of the Instagram post is attached hereto as Exhibit 27. The Soroses did, in fact, close the Tampa Studio on or about March 20, 2023 and never reopened.

87. The Instagram page, and all other social media accounts, for the Tampa Studio were subject to AKT's access and control under the Tampa FA. *See* Ex. 13, at 19. Pursuant to the Tampa FA to which the Soroses agreed, AKT retained the right to control all use of social media by the Soroses that mentioned or used AKT's marks, and to occupy the Tampa Studio's social media pages.

88. The Soroses did not seek or receive approval from AKT to post the March 17, 2023 Instagram announcement, or for the use of the AKT marks or other related IP in connection therewith.

89. Through their March 17, 2023 Instagram announcement and subsequent March 20, 2023 closure of the Tampa Studio, the Soroses materially breached the Tampa FA in multiple respects, including, but not limited to, the following:

- Failing and refusing to at all times faithfully, honestly, and diligently perform their obligations under the Tampa FA and use best efforts to promote AKT and the Tampa Studio. Ex. 13, at 2.
- Failing and refusing to operate the Tampa Studio in accordance with the Tampa FA, open the studio for regular, continuous business, or comply with the franchise manual, system, and standards, including to operate the studio seven days a week, because it was permanently closed on March 20, 2023. Ex. 13, at 2.
- Intentionally using AKT's marks in a manner *not* authorized by AKT by featuring the AKT logo, purple colorway, and distinctive font and formatting in an official-appearing public social media post coming from the Instagram account of the Tampa Studio that announced its unauthorized closure—inconsistent with the Soroses' obligation to promote AKT and the Tampa Studio. Ex. 13, at 5.
- Abandoning the Tampa Studio including by "indicat[ing] a desire or intent to discontinue operating the Studio in accordance with [the Tampa FA] or the Manual." Ex. 13, at 27.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

- Materially misusing AKT's marks, including the AKT logo, purple colorway, and the Tampa Studio's Instagram webpage, to tarnish, denigrate, and harm the brand. Ex. 13, at 27.
- Utilizing studio information, including membership information and franchisee-franchisor relations, and proprietary marks and systems in an unauthorized manner to announce the unilateral closure of the Tampa Studio. Ex. 13, at 27–29.

90. Under the Tampa FA, the Soroses were obligated to operate the Tampa Studio for an initial term of ten years, and to pay all initial and ongoing monetary obligations during that time. These monetary obligations included "royalty fee equal to seven percent (7%) of the Gross Sales . . . generated by the Studio" throughout the ten-year term of the agreement, contributions to the marketing fund, and to pay technology and other ongoing fees as incurred. Ex. 13, at 6–8.

91. The Tampa FA also contained a provision under which the Soroses agreed to indemnify AKT for any costs and expenses incurred due to their operation of the Tampa Studio. Ex. 13, at 22.

92. Section 15.1(A)(4) of the Tampa FA entitled AKT to terminate the FA and pursue recourse for breach of the FA if the franchisee "voluntarily or otherwise abandons the Studio." *See* Ex. 13, at 27. The term "abandon" is defined in the Tampa FA to include "failure to actively operate the Studio for more than two (2) business days without Franchisor's prior written consent." *Id.*

93. Pursuant to section 15.1(A)(4) of the Tampa FA, the Soroses' unilateral closure of the Tampa Studio constituted abandonment and was grounds for immediate termination of the FA.

94. On March 22, 2023, AKT terminated the Tampa FA due to the Soroses' abandonment of the Tampa Studio. A true and accurate copy of the Notice of Termination is attached hereto as Exhibit 28.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

***Paul Dumas, Jodi Dumas, and AdEdge Services Abandon the Plantation and Coral Springs Studios***

95. On or about October 30, 2022, Jodi Dumas, on behalf of AdEdge Services, generated a bulk email that informed all inquiring and soliciting information about Plantation Studio and Coral Springs Studio, respectively, that the studios were closed indefinitely.

96. Under the Plantation and Coral Springs FAs, the Dumases and AdEdge Services were obligated to operate the Plantation and Coral Springs Studios for an initial term of ten years, and to pay all initial and ongoing monetary obligations during that time. These monetary obligations included "royalty fee equal to seven percent (7%) of the Gross Sales . . . generated by the Studio" throughout the ten-year term of the FAs, contributions to the marketing fund, and to pay technology and other ongoing fees as incurred. Exs. 29 and 30, at 7–9.

97. Both the Plantation and Coral Springs FAs contained a provision under which AdEdge Services agreed to indemnify AKT for any costs and expenses incurred due to their operation of the Plantation and Coral Springs Studios. Exs. 29 and 30, at 24.

98. Section 15.1(A)(4) of the Plantation and Coral Springs FAs entitled AKT to terminate the FAs and pursue recourse for breach of the FAs if the franchisee "voluntarily or otherwise abandons the Studio." Exs. 29 and 30, at 29–30. The term "abandon" is defined in the Plantation and Coral Springs FAs to include "failure to actively operate the Studio for more than two (2) business days without Franchisor's prior written consent." *Id.* at 30.

99. Pursuant to section 15.1(A)(4) of the Plantation and Coral Springs FAs, the Dumases and AdEdge Services' unilateral closure of the Plantation and Coral Springs Studios constituted abandonment and was grounds for immediate termination of the FAs. In addition, they were in default of the Fort Lauderdale ADA due to their failure to open eight of the ten required locations, as well as

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

under the cross-default provision of the Plantation and Coral Springs FAs. Exs. 29 and 30, at 32.

100. AKT terminated the Plantation and Coral Springs FAs by Notice of Termination of Franchise Agreements dated November 2, 2022. A true and accurate copy of the Notice of Termination is attached hereto as Exhibit 31.

* * *

101. AKT was blindsided and left scrambling to manage the fallout from these sudden closures.

102. Counter Defendants' misconduct prevented AKT from establishing a desired AKT® studio presence in key markets for boutique fitness studios, despite being contacted by others interested in establishing franchises in these substantial development areas. In addition to losing market share in key areas, AKT has also been damaged by Counter Defendants' breaches in the form of lost business, customers, goodwill, royalties, fees and other income—as well as harm to the company's brand and reputation.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

**<u>FIRST CAUSE OF ACTION</u>**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement -**

**Against Property Maintenance, Inc.)**

103. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

104. On or about September 12, 2018, Property Maintenance executed the Royal Oak FA with AKT.

105. AKT has performed all covenants required to be performed by it under the Royal Oak FA.

106. Property Maintenance has materially breached and continues to be in breach of the Royal Oak FA by, *inter alia*, failing to operate the Royal Oak Studio for the full ten-year term and pay all amounts due to AKT.

107. As a direct and proximate result of Property Maintenance's breaches of the Royal Oak FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

108. As a further direct and proximate result of Property Maintenance's breaches of the Royal Oak FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Royal Oak FA, Property Maintenance knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against Property Maintenance.

109. In doing the things alleged herein, Property Maintenance knew of AKT's rights under the Royal Oak FA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the Royal Oak FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against Property Maintenance.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

## (Breach of the Guarantee - Against Deanna Alfredo)

110. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

111. Under the Royal Oak Guarantee, Alfredo unconditionally guaranteed the full and timely performance of all of Property Maintenance's obligations under the Royal Oak FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

112. AKT has performed all covenants required to be performed by it under the Royal Oak FA and Royal Oak Guarantee.

113. Alfredo materially breached the Royal Oak FA and Royal Oak Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Royal Oak Studio for the full ten-year term. She is personally, and jointly and severally, liable for the breaches of the Royal Oak FA and Royal Oak Guarantee.

114. As a result of Alfredo's breach of the Royal Oak Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

115. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Royal Oak FA and under the Royal Oak Guarantee.

**<u>THIRD CAUSE OF ACTION</u>**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement -**

**Against Dance Fitness Michigan, LLC)**

116. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

117. On or about June 26, 2019, Dance Fitness executed the Rochester Hills FA with AKT.

118. AKT has performed all covenants required to be performed by it under the Rochester Hills FA.

119. Dance Fitness has materially breached and continues to be in breach of the Rochester Hills FA by, *inter alia*, failing to operate the Rochester Hills Studio for the full ten-year term and pay all amounts due to AKT.

120. As a direct and proximate result of Dance Fitness's breaches of the Rochester Hills FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

121. As a further direct and proximate result of Dance Fitness's breaches of the Rochester Hills FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Rochester Hills FA, Dance Fitness knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against Dance Fitness.

122. In doing the things alleged herein, Dance Fitness knew of AKT's rights under the Rochester Hills FA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against Dance Fitness.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## **FOURTH CAUSE OF ACTION**

## **BREACH OF CONTRACT**

**(Breach of the Guarantee -**
**Against Deanna Alfredo)**

123. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

124. Under the Rochester Hills Guarantee, Alfredo unconditionally guaranteed the full and timely performance of all of Dance Fitness's obligations under the FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

125. AKT has performed all covenants required to be performed by it under the Rochester Hills FA and Rochester Hills Guarantee.

126. Alfredo materially breached the Rochester Hills FA and Rochester Hills Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Rochester Hills Studio for the full ten-year term. She is personally, and jointly and severally, liable for the breaches of the Rochester Hills FA and Rochester Hills Guarantee.

127. As a result of Alfredo's breach of the Rochester Hills Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

128. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Rochester Hills FA and under the Rochester Hills Guarantee.

**FIFTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of Area Development Agreement -**

**Against Property Maintenance, Inc.)**

129. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

130. On or about September 12, 2018, Property Maintenance entered into the Michigan ADA, under which Property Maintenance undertook the obligation to open and operate three AKT® studios within the designated development area pursuant to a development schedule. On or about March 27, 2019, Property Maintenance amended the Michigan ADA to reflect its agreement to open a fourth AKT® studio.

131. AKT has performed all covenants required to be performed by it under the Michigan ADA.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

132. Property Maintenance has breached and continues to be in breach of the Michigan ADA by, *inter alia*, wrongfully failing to develop four studios within the time frame set forth in the ADA.

133. As a direct and proximate cause of Property Maintenance's breaches of the Michigan ADA, as amended, AKT has incurred and continues to incur damages in an amount to be proven at trial.

134. As a further direct and proximate cause of Property Maintenance's breaches of the Michigan ADA, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 12(C) of the ADA and the attorneys' fees and costs provision of section 23(D) of the ADA. In addition, by virtue of the Michigan ADA, Property Maintenance knew of AKT's rights under the ADA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against Property Maintenance.

135. In doing the things alleged herein, Property Maintenance knew of AKT's rights under the Michigan ADA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the ADA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against Property Maintenance.

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guaranty -**

**Against Deanna Alfredo)**

136. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

137. Under the Michigan ADA Guaranty, Alfredo (a) unconditionally guaranteed the punctual payment and performance of each obligation of Developer

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

under the ADA, and (b) unconditionally agreed to be "personally bound by, and personally liable for the breach of, each and every obligation of Developer" under the ADA. *See* Ex. 2, at Attachment to Development Agreement. The term "Developer" in the Michigan ADA Guaranty is defined to mean Property Maintenance. *Id.*

138. AKT has performed all covenants required to be performed by it under the Michigan ADA and Michigan ADA Guaranty.

139. Alfredo materially breached the Michigan ADA Guaranty by, *inter alia*, failing to ensure the development of all four locations pursuant to the Michigan ADA, as amended.

140. As a result of Alfredo's breach of the Michigan ADA Guaranty, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

141. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred under section 23(D) of the Michigan ADA.

**<u>SEVENTH CAUSE OF ACTION</u>**

**BREACH OF CONTRACT**

**(Breach of the Note -**

**Against Dance Fitness Michigan, LLC)**

142. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

143. On or about April 19, 2021, Dance Fitness executed the Michigan Note, under which it agreed to repay certain monies to AKT.

144. Dance Fitness failed to make the payments required under the Michigan Note.

145. As a result of Dance Fitness's breach of its obligations under the Michigan Note, AKT has incurred damages, interest, law fees, costs and attorneys' fees.

146. AKT is entitled to recover its costs and attorneys' fees under section 11 of the Michigan Note.

**EIGHTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Note Guaranty - Against Deanna Alfredo)**

147. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

148. Alfredo breached her obligations under the Michigan Note Guaranty by failing to ensure the payment of monies under the Michigan Note.

149. As a result of Alfredo's breach of her obligations under the Michigan Note Guaranty, AKT has incurred damages, interest, law fees, costs and attorneys' fees.

150. AKT is entitled to recover its costs and attorneys' fees under section 11 of the Michigan Note.

**NINTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement - Against S2 Fitness Enterprises, LLC)**

151. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

152. On or about March 21, 2019, Cox, as Manager of HCE, executed the Inman Park FA with AKT. HCE assigned, and S2 Fitness assumed, all its rights and obligations under the Inman Park FA to S2 Fitness on November 26, 2019.

153. AKT has performed all covenants required to be performed by it under the Inman Park FA.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

154. S2 Fitness has materially breached and continues to be in breach of the Inman Park FA by, *inter alia*, failing to operate the Inman Park Studio for the full ten-year term and pay all amounts due to AKT.

155. As a direct and proximate result of S2 Fitness's breaches of the Inman Park FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

156. As a further direct and proximate result of S2 Fitness's breaches of the Inman Park FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Inman Park FA, S2 Fitness knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against S2 Fitness.

157. In doing the things alleged herein, S2 Fitness knew of AKT's rights under the Inman Park FA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the Inman Park FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against S2 Fitness.

## TENTH CAUSE OF ACTION

## BREACH OF CONTRACT

## (Breach of the Guarantee - Against Samantha Cox)

158. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

159. Under the Inman Park Guarantee, Cox unconditionally guaranteed the full and timely performance of all of HCE's obligations under the Inman Park FA,

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

160. AKT has performed all covenants required to be performed by it under the Inman Park FA and Inman Park Guarantee.

161. Cox materially breached the Inman Park FA and Inman Park Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Inman Park Studio for the full ten-year term. She is personally, and jointly and severally, liable for the breaches of the Inman Park FA and Inman Park Guarantee.

162. As a result of Cox's breach of the Inman Park Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

163. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Inman Park FA and under the Inman Park Guarantee.

**ELEVENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guarantee -**

**Against Samantha Cox and Suzanne Fischer)**

164. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

165. Under the Inman Park Assignment Guarantee, Cox and Fischer unconditionally guaranteed the full and timely performance of all of their obligations under the Inman Park FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

166. AKT has performed all covenants required to be performed by it under the Inman Park FA.

167. Cox and Fischer materially breached the Inman Park FA and Inman Park Assignment Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Inman Park Studio for the full ten-year term. They are personally, and jointly and severally, liable for the breaches of the Inman Park FA and Inman Park Assignment Guarantee.

168. As a result of Cox and Fischer's breach of the Inman Park Assignment Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

169. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Inman Park FA and under the Inman Park Assignment Guarantee.

**<u>TWELFTH CAUSE OF ACTION</u>**

**BREACH OF CONTRACT**

**(Breach of Area Development Agreement -**

**Against Samantha Cox and Suzanne Fischer)**

170. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

171. On or about September 12, 2018, Cox and Fischer entered into the Atlanta ADA, under which they undertook the obligation to open and operate three

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

AKT® studios within the designated development area pursuant to a development schedule.

172. AKT has performed all covenants required to be performed by it under the Atlanta ADA.

173. Cox and Fischer have breached and continue to be in breach of the Atlanta ADA by, *inter alia*, wrongfully failing to develop three studios within the time frame set forth in the ADA.

174. As a direct and proximate cause of Cox and Fischer's breaches of the Atlanta ADA, AKT has incurred and continues to incur damages in an amount to be proven at trial.

175. As a further direct and proximate cause of Cox and Fischer's breaches of the Atlanta ADA, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 12(C) of the ADA and the attorneys' fees and costs provision of section 23(D) of the ADA. In addition, by virtue of the Atlanta ADA, Cox and Fischer knew of AKT's rights under the ADA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against Cox and Fisher.

176. In doing the things alleged herein, Cox and Fischer knew of AKT's rights under the Atlanta ADA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the ADA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against Cox and Fischer.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## THIRTEENTH CAUSE OF ACTION

## BREACH OF CONTRACT

## (Breach of the Guaranty - Against Samantha Cox and Suzanne Fischer)

177. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

178. Under the Atlanta ADA Guaranty, Cox and Fischer (a) unconditionally guaranteed the punctual payment and performance of each obligation of Developer under the ADA, and (b) unconditionally agreed to be "personally bound by, and personally liable for the breach of, each and every obligation of Developer" under the Atlanta ADA. *See* Ex. 7, at Attachment to Development Agreement. The term "Developer" in the Atlanta ADA Guaranty is defined to mean Cox and Fischer. *Id.*

179. AKT has performed all covenants required to be performed by it under the Atlanta ADA and Atlanta ADA Guaranty.

180. Cox and Fischer materially breached the Atlanta ADA Guaranty by, *inter alia*, failing to ensure the development of all three locations pursuant to the Atlanta ADA.

181. As a result of Cox and Fischer's breach of the Atlanta ADA Guaranty, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

182. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred under section 23(D) of the Atlanta ADA.

**<u>FOURTEENTH CAUSE OF ACTION</u>**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement -**

**Against Nisha Moeller and Teeny Turner LLC)**

183. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

184. On or about December 31, 2019, Moeller executed the Chicago FA with AKT. Moeller assigned, and Teeny Turner assumed, all her rights and obligations under the Chicago FA to Teeny Turner on June 16, 2021.

185. AKT has performed all covenants required to be performed by it under the Chicago FA.

186. Moeller and Teeny Turner have materially breached and continue to be in breach of the Chicago FA by, *inter alia*, announcing the closure of the Chicago Studio with unauthorized and material misuse of AKT's marks and other IP, failing to operate the Studio for the full ten-year term, and failing to pay all amounts due to AKT.

187. As a direct and proximate result of Moeller and Teeny Turner's breaches of the Chicago FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

188. As a further direct and proximate result of Moeller and Teeny Turner's breaches of the Chicago FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Chicago FA, Moeller and Teeny Turner knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against Moeller and Teeny Turner.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

189. In doing the things alleged herein, Moeller and Teeny Turner knew of AKT's rights under the Chicago FA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the Chicago FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against Moeller and Teeny Turner.

**FIFTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guarantee -**
**Against Nisha Moeller)**

190. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

191. Under the Chicago Guarantee, Moeller unconditionally guaranteed the full and timely performance of all of Teeny Turner's obligations under the Chicago FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

192. AKT has performed all covenants required to be performed by it under the Chicago FA and Chicago Guarantee.

193. Moeller materially breached the Chicago FA and Chicago Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the Chicago FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Chicago Studio for the full ten-year term. She is personally, and jointly and severally, liable for the breaches of the Chicago FA and Chicago Guarantee.

194. As a result of Moeller's breach of the Chicago Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

195. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Chicago FA and under the Chicago Guarantee.

**SIXTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement - Against Nichole Soros and Michael Soros)**

196. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

197. On or about February 23, 2021, the Soroses executed the Tampa FA with AKT.

198. AKT has performed all covenants required to be performed by it under the Tampa FA.

199. The Soroses have materially breached and continue to be in breach of the Tampa FA by, *inter alia*, failing to operate the Tampa Studio for the full ten-year term and pay all amounts due to AKT.

200. As a direct and proximate result of the Soroses' breaches of the Tampa FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

201. As a further direct and proximate result of the Soroses' breaches of the Tampa FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Tampa FA, the Soroses knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against the Soroses.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

202. In doing the things alleged herein, the Soroses knew of AKT's rights under the Tampa FA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the Tampa FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against the Soroses.

**SEVENTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guarantee -**

**Against Nichole Soros and Michael Soros)**

203. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

204. Under the Tampa FA Guarantee, the Soroses unconditionally guaranteed the full and timely performance of all of their obligations under the Tampa FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

205. AKT has performed all covenants required to be performed by it under the Tampa FA and Tampa FA Guarantee.

206. The Soroses materially breached the Tampa FA and Tampa FA Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Tampa Studio for the full ten-year term. They are personally, and jointly and severally, liable for the breaches of the Tampa FA and Tampa FA Guarantee.

207. As a result of the Soroses' breach of the Tampa FA Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

208. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Tampa FA and under the Tampa FA Guarantee.

**EIGHTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of Area Development Agreement - Against Nichole Soros and Michael Soros)**

209. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

210. On or about February 24, 2021, the Soroses entered into the Tampa ADA, under which the Soroses undertook the obligation to open and operate three AKT® studios within the designated development area pursuant to a development schedule.

211. AKT has performed all covenants required to be performed by it under the Tampa ADA.

212. The Soroses have breached and continue to be in breach of the Tampa ADA by, *inter alia*, wrongfully failing to develop three studios within the time frame set forth in the ADA.

213. As a direct and proximate cause of the Soroses' breaches of the Tampa ADA, AKT has incurred and continues to incur damages in an amount to be proven at trial.

214. As a further direct and proximate cause of the Soroses' breaches of the Tampa ADA, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 12(C) of the ADA and the attorneys' fees and costs provision of section 23(D) of the ADA. In addition, by virtue of the Tampa ADA, the Soroses knew of AKT's rights under the ADA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against the Soroses.

215. In doing the things alleged herein, the Soroses knew of AKT's rights under the Tampa ADA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the ADA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against the Soroses.

**NINETEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guaranty -**

**Against Nichole Soros and Michael Soros)**

216. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

217. Under the Tampa ADA Guaranty, the Soroses (a) unconditionally guaranteed the punctual payment and performance of each obligation of Developer under the ADA, and (b) unconditionally agreed to be "personally bound by, and personally liable for the breach of, each and every obligation of Developer" under the ADA. *See* Ex. 14, at Attachment to Development Agreement. The term "Developer" in the Tampa ADA Guaranty is defined to mean the Soroses. *Id.*

218. AKT has performed all covenants required to be performed by it under the Tampa ADA and Tampa ADA Guaranty.

219. The Soroses materially breached the Tampa ADA Guaranty by, *inter alia*, failing to ensure the development of all three locations pursuant to the Tampa ADA.

220. As a result of the Soroses' breach of the Tampa ADA Guaranty, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

221. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred under section 23(D) of the Tampa ADA.

**TWENTIETH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement - Against AdEdge Services Inc.)**

222. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

223. On or about December 31, 2020, AdEdge Services executed the Plantation FA with AKT.

224. AKT has performed all covenants required to be performed by it under the Plantation FA.

225. AdEdge Services has materially breached and continues to be in breach of the Plantation FA by, *inter alia*, failing to operate the Plantation Studio for the full ten-year term and pay all amounts due to AKT.

226. As a direct and proximate result of AdEdge Services breaches of the Plantation FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

227. As a further direct and proximate result of AdEdge Services' breaches of the Plantation FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Plantation FA, AdEdge Services knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against AdEdge Services.

228. In doing the things alleged herein, AdEdge Services knew of AKT's rights under the Plantation FA and despite such knowledge acted maliciously and

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the Plantation FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against AdEdge Services.

**TWENTY-FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guarantee -**
**Against Paul Dumas)**

229. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

230. Under the Plantation Guarantee, Paul Dumas unconditionally guaranteed the full and timely performance of all of AdEdge Services' obligations under the Plantation FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

231. AKT has performed all covenants required to be performed by it under the Plantation FA and Plantation Guarantee.

232. Paul Dumas materially breached the Plantation FA and Plantation Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Plantation Studio for the full ten-year term. He is personally, and jointly and severally, liable for the breaches of the Plantation FA and Plantation Guarantee.

233. As a result of Paul Dumas's breach of the Plantation Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

234. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Plantation FA and Plantation Guarantee.

**TWENTY-SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Franchise Agreement -**

**Against AdEdge Services Inc.)**

235. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

236. On or about September 30, 2021, AdEdge Services executed the Coral Springs FA with AKT.

237. AKT has performed all covenants required to be performed by it under the Coral Springs FA.

238. AdEdge Services has materially breached and continues to be in breach of the Coral Springs FA by, *inter alia*, failing to operate the Coral Springs Studio for the full ten-year term and pay all amounts due to AKT.

239. As a direct and proximate result of AdEdge Services' breaches of the Coral Springs FA as alleged herein, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

240. As a further direct and proximate result of AdEdge Services' breaches of the Coral Springs FA as alleged herein, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 11.2 of the FA and the attorneys' fees and costs provision of section 16.10 of the FA. In addition, by virtue of the Coral Springs FA, AdEdge Services knew of AKT's rights under the FA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against AdEdge Services.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

241. In doing the things alleged herein, AdEdge Services knew of AKT's rights under the Coral Springs FA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the FA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against AdEdge Services.

**TWENTY-THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guarantee -**
**Against Paul Dumas)**

242. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

243. Under the Coral Springs Guarantee, Paul Dumas unconditionally guaranteed the full and timely performance of all of AdEdge Services' obligations under the FA, including "the full and timely performance by Franchisee of each obligation undertaken by Franchisee . . . including all of Franchisee's monetary obligations arising under or by virtue of the Franchise Agreement."

244. AKT has performed all covenants required to be performed by it under the Coral Springs FA and Coral Springs Guarantee.

245. Paul Dumas materially breached the Coral Springs FA and Coral Springs Guarantee by, *inter alia*, failing to guarantee the full and timely performance of all of the franchisee's obligations under the FA, including the obligation to pay all amounts due to AKT and the obligation to continue to operate the Coral Springs Studio for the full ten-year term. He is personally, and jointly and severally, liable for the breaches of the Coral Springs FA and Coral Springs Guarantee.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

246. As a result of Paul Dumas's breach of the Coral Springs Guarantee, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

247. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred in enforcing the guarantees under section 16.10 of the Coral Springs FA and Coral Springs Guarantee.

**TWENTY-FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of Area Development Agreement -**

**Against AdEdge Services Inc.)**

248. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

249. On or about June 9, 2020, AdEdge Services entered into the Fort Lauderdale ADA, under which AdEdge Services undertook the obligation to open and operate ten AKT® studios within the designated development area pursuant to a development schedule.

250. AKT has performed all covenants required to be performed by it under the Fort Lauderdale ADA.

251. AdEdge Services has breached and continues to be in breach of the Fort Lauderdale ADA by, *inter alia*, wrongfully failing to develop ten studios within the time frame set forth in the ADA.

252. As a direct and proximate cause of AdEdge Services' breaches of the Fort Lauderdale ADA, AKT has incurred and continues to incur damages in an amount to be proven at trial.

253. As a further direct and proximate cause of AdEdge Services' breaches of the Fort Lauderdale ADA, AKT is entitled to reasonable attorneys' fees, pursuant to the indemnification provision of section 12(C) of the ADA and the attorneys' fees and costs provision of section 23(D) of the ADA. In addition, by

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

virtue of the Fort Lauderdale ADA, AdEdge Services knew of AKT's rights under the ADA and, despite such knowledge, acted in bad faith with the intention of harming AKT and depriving it of the benefits of the contract, so as to entitle AKT to an award of attorneys' fees against AdEdge Services.

254. In doing the things alleged herein, AdEdge Services knew of AKT's rights under the Fort Lauderdale ADA and despite such knowledge acted maliciously and without probable cause, for the purpose of injuring AKT by depriving it of the benefits of the ADA, or with ill will for AKT and reckless indifference to the harm to AKT, all so as to entitle AKT to an award of punitive damages against AdEdge Services.

**TWENTY-FIFTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Breach of the Guaranty -**

**Against Paul Dumas and Jodi Dumas)**

255. AKT repeats, realleges, and incorporates by this reference all prior allegations as if set forth fully herein.

256. Under the Fort Lauderdale ADA Guaranty, the Dumases (a) unconditionally guaranteed the punctual payment and performance of each obligation of Developer under the ADA, and (b) unconditionally agreed to be "personally bound by, and personally liable for the breach of, each and every obligation of Developer" under the ADA. *See* Ex. 19, at Attachment to Development Agreement. The term "Developer" in the Fort Lauderdale ADA Guaranty is defined to mean AdEdge Services. *Id.*

257. AKT has performed all covenants required to be performed by it under the Fort Lauderdale ADA and Fort Lauderdale ADA Guaranty.

258. The Dumases materially breached the Fort Lauderdale ADA Guaranty by, *inter alia*, failing to ensure the development of all ten locations pursuant to the Fort Lauderdale ADA.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

259. As a result of the Dumases' breach of the Fort Lauderdale ADA Guaranty, AKT has incurred damages, including lost future royalties, in an amount to be proven at trial.

260. AKT is also entitled to recover reasonable attorneys' fees and any other expenses incurred under section 23(D) of the Fort Lauderdale ADA.

## PRAYER FOR RELIEF

WHEREFORE, AKT prays for judgment against Counter Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be determined at trial;

2. For exemplary or punitive damages in an amount to be determined at trial;

3. For prejudgment interest to the fullest extent allowable by law;

4. For costs of suit, including reasonable attorneys' fees, to the fullest extent allowable by law; and

5. For such other and further relief as may be just and proper under the circumstances.

Dated: November 7, 2023

WILLKIE FARR & GALLAGHER LLP

By: /s/ Alex M. Weingarten
Alex M. Weingarten
Matthew M. Gurvitz

Attorneys for Defendant AKT Franchise, LLC

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000